WHITF, J.,
delivered the opinion of the Court:
After stating the case, he said, that the important question, on which, indeed, all the others depend, is that propounded last, to wit: “Does a mandamus lie from a Superior Court of Law to a County Court, to compel such County Court to build abridge or causeway, according to the 7th section of the act concerning public roads ? (a)
*To shew that it will not lie, it has been argued that the law does not require the Court to build such bridge or causeway unless it be necessary, nor even then, unless the surveyor and his assistants cannot make or maintain the same ; that when called upon to do so, the Court must necessarily enquire and determine upon the necessity of the bridge, or causeway, and upon the capacity of the overseer and his assistants; that this enquiry and decision imply a discretion in the Court, and that no mandamus lies to prescribe to an inferior body, having judicial or discretionary powers, the manner in which it shall exercise them : and in_ support of this proposition, sundry authorities have been cited; (b)
But if this doctrine be true, to the extent contended for in this case, then is there an end to the remedy by mandamus. For, no case can be imagined where a Court, a corporation, or an individual can be called upon, on the happening of any event whatever, to perform an act, in which the body, or person so called upon, has not the right to enquire whether the event has happened, and whether, under the circumstances of the case, he or it is bound to perform the act. But, the cases relied upon do not support the doctrine, even in the case of an Inferior Court exercising judicial functions. There are *116 •authorities (c) which shew, that if a party has ascertained his right to a particular judgment, and the Inferior Court, through mistake, or perverseness, will not render that judgment, but will evade it by granting a new trial, or other improper means, and there is no other remedy, the party injured' shall have his mandamus; for otherwise there would be a failure of justice.
But, here is no pretence to judicial powers. The Court is merely substituted, in a certain event, in the place of the overseer of the road, and the functions which it is required to perform in his stead, in the event of his incapacity, relate altogether to the police of the county, and are perfectly ministerial. They do not partake so much of the nature of judicial power as the admission of deeds to record, and yet a mandamus lies to compel a County Court to do that. Now, there is not one of the cases to which the Court has been referred, which intimates that persons acting in *the character of police or ministerial officers, cannot, on account of this discretion, be coerced to perform their duty : on the contrary, it will be found that the strongest of those cases, and those most relied on, (the cases about unequal poor rates,) were decided upon another principle. The writs were refused, not because the overseers had a discretion, but because the Act of Parliament had pointed out another remedy, to wit: by appeal to the Quarter Sessions, from whence they can be carried to the Court of King’s Bench. It seems to the Court, therefore, that those authorities have failed to support the proposition contended for by the Justices.
There are others, however, which seem to import a very different doctrine. We are informed (d) that the Court of King’s Bench “having a superintendency over all the other Courts will oblige them to execute that justice which the party is entitled to,” and “which they are enjoined to do,” and after some examples it is added, “for these being things enjoined by Statute, the Temporal Courts will take care that due obedience is paid to them.” Lord Mansfield says, (e) “A mandamus is a prerogative writ; to the aid of which the subject is entitled upon a proper case previously shewn to the satisfaction of the Court. The original nature of the writ, and the end for which it was framed, direct upon what occasions it shall be used. It was introduced to prevent disorder from a failure of justice, and defect of police. Therefore, it ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one.” And again in the same case, “if there be a right, and no other specific remedy, this should not be denied.” The same Judge in another case (f) says, “There is no other remedy than what is now applied for : and this is the very reason of the Court’s issuing the prerogative writ of mandamus ; because there is no other specific remedy.” And again, after shewing authority in .support of the writ, he says, “but if it was not so, I should still think that, as here is no other specific remedy, the Court ought to grant it.” The same doctrine is laid down in various cases (g) in *Cowper, Durnford & Fast, and particularly in 4 Burrow, in the Case of Rex v. Doctor Askew, et al. Censors of the College of Physicians. The question arose about admitting Doctor Letch a member of that body. It cannot well be supposed, that any corporate body could have a more unbridled discretion than the College seems to have had upon that subject. The writ was denied upon the merits of the case, but Lord Mansfield expresses himself as follows: “There is no doubt that where a party who has a right, has no other specific legal remedy, the Court will assist him by issuing this prerogative writ, in order to his obtaining such right.
“There can be as little doubt that the College are obliged, in conformity to the trust and confidence placed in them by the Crown and the public, to admit all that are fit, and to reject all that are unfit. For, under the reason and spirit and true construction of this Charter and this Act of Parliament, no person ought to be suffered to practise physic, but such only as have skill and ability, and have diligently applied themselves to the study, and are well grounded in the knowledge of it: and on the other hand, all persons who are so qualified, and have bestowed their time, and money, and labour, in the proper studies that tend to such qualifications, have a right to be admitted to exercise, and practise their profession. And the public have also a right to the assistance of such a person, who has, by his labour and studies, rendered himself capable of serving the public, by giving them proper advice and directions.” “Supposing (he af-terwards adds) the comitia majora to execute their power corruptly, taking this word in a large sense, and that they should refuse to admit a person who had been examined, approved, and regularly proposed to them without being able to deny his fitness (in this case the Court has not denied the necessity of the bridges,) “this Court ought indeed, in such case, to interpose.”
The result of these authorities seems to be, that the Superior Court of Law, which, quoad hoc, possesses the same power possessed by the Court of King’s Bench, will oblige all Courts and Magistrates, to execute that justice to which any party is entitled, and which they are enjoined to do by law, especially if it be enjoined by Statute: that they will do this by mandamus in all cases where there is a right, and no other specific remedy : that the original nature of the writ, and the end for which it was framed, *ought to direct upon what occasions it should issue: that the end for which it was framed *117 was to prevent a failure of justice, and a defect of police, and that it ought to be used on all occasions where there is no other specific remedy, and justice and good government require one : and that ministerial and police officers are not protected from its control by any discretion which may be supposed to grow out of the nature of their functions.
This is believed to be a fair and correct statement of the law, and if it is, the application of it to the question before the Court will not be hard. The power to erect bridges, and causeways, is a police power. It is given in a supposed case to the County Courts. They are not only empowered, but by Statute expressly required, to exercise it. If then the case does not exist, and the Court of the County refuses to execute the power, without a lawful reason, 'on a mere pretext that they have a discretion to do as they list, it would seem pretty clear that it could be coerced to do its duty by a mandamus, unless the law has furnished the public with some other specific remedy, which it is believed, it has not.
It has been said that the County Court ought to possess exclusive power in these cases, because the money is to be levied by them on their county. This is making it a mere county affair, but it is not so. It is one in which the whole State, and even the United States may be deeply interested. Give those Courts the absolute and uncontroled power claimed for them, and the caprice of one County Court, may destroy, or prevent the erection of a bridge or causeway, essential to the portage and convenience of an immense portion of the country.
It has also been said, that the provision made for a mandamus in the 8th section (h) indicates an opinion in the Legislature, that such a provision was necessary to justify the awarding of the writ, and therefore that no provision of that sort being made by the 7th section, none can issue to enforce obedience to its directions.
To this it has been answered, and the Court thinks satisfactorily, that if the 8th section had not been enacted, it seems sufficiently clear, from the reasons already assigned, that the Superior Court would have a right to issue the *writ : that it ought not to be ousted of this jurisdiction, by implication, unless it is a necessary one : that this is far from being so, there being other sufficient reasons for this provision in the 8th section. By the common mode of proceeding there must be a rule ; a return to that rule ; a mandamus nisi ; and a return to that, or a default on the return day, before a peremptory mandamus can go. But, after the necessity of the case had been ascertained to the satisfaction of one County Court, and it had proceeded in the business as directed by the 8th section, it was thought unnecessary, and injurious to compel it to submit to all this delay ; and therefore it is, that the Legislature has directed the mandamus to issue on the first application and the merits to be settled on the first return. Lor these reasons, the following is to be entered as the judgment of the Court:
The Court doth decide by the unanimous opinion of the Judges present: 1. That a mandamus does lie from a Superior Court of Law to a County Court, to compel such County Court to build a bridge or causeway, according to the 7th section of the act concerning public roads. 2. That the return to the mandamus in this case is insufficient, by reason of its not directly denying the necessity of the bridges, or averring that the surveyor and his assistants could make and maintain the same, and that therefore the said return does not shew such a case as liberates the Justices from further proceedings on the said mandamus. 3. That although the facts stated in a sufficient return to a mandamus may well be traversed, yet the return in this case being altogether insufficient, it would have been a vain thing to put the matter thereof in issue, and that therefore the said traverse ought not to have been tendered, nor ought any issue to have been joined thereon. Which is ordered to be certified.

 1 Rev. Code of 1792, ch. 19, § 7, ed. ’ll, p. 39 ; 2 R. C. of ’19, ch. 236, § 9, p. 237.

 4 Bac. Ab. Maud. D. 507-8-9, Wilson’s ed. Comb. 422,478; 1 Black. Rep. 667 ; 4 Burr. 2290 ; 2 Str. 1259; And. 24 ; and 6 Mod. 229.

 1 Strange, 113, 393 ; 4 Bac. Ab. 510, wilson’s ed. and the authorities there referred to.

 4 Bac. Ah. 507, Wilson’s ed.

 Rex v. Barker et al., 3 Burr. 1267.

 Rex v. Vice Chancellor Cambridge, 3 Burr. 1659.

 Cowper, 378; 1 D. &E. 404; 3 D. & E. 651; 4 Burr. 2168-88-90.

 1 Rev. Code of ’98, ch. 19, § 8, ed. of 1814, p. 39; 2 Rev. Code of 1810, ch. 236, § 10, p. 237.